IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARUNAN SIVALINGAM, M.D. | : | CIVIL ACTION |
| v. | : | |
| UNUM PROVIDENT CORPORATION, et al. | : | NO. 09-4702 |

MEMORANDUM

Bartle, C.J.                                                                July 1, 2010

        Plaintiff Arunan Sivalingam, M.D. ("Sivalingam") brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). He seeks judicial review of the decision of defendants Unum Group and Unum Life Insurance Company of America (collectively, "Unum")[1] to terminate payment of benefits which Sivalingam contends are due to him under a group long term disability insurance policy issued to his then employer. Before the court is the Motion of Unum pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure to quash and/or for a protective order with regard to a Notice of Deposition served on Unum by Sivalingam.

---

1. Although the defendants are listed in the caption as Unum Provident Corporation and Unum Corporation, defendants have advised the court that the caption incorrectly denominates the defendant corporations. According to the defendants, the insurer, and proper defendant, is Unum Life Insurance Company of America, with Unum Group merely acting as a holding company.

I.

According to the complaint, Sivalingam practiced as a retinal surgeon with Ophthalmic Subspecialty Consultants, P.C. ("OPC"), now known as Ophthalmic Partners of Pennsylvania ("OPP"). On November 14, 1997, he suffered a massive anterior wall myocardial infarction secondary to a blockage of the left main anterior descending coronary artery, for which he was hospitalized for six weeks. On June 21, 1998, Sivalingam underwent heart-transplant surgery. As a result of the transplant, he is required to take immunosuppressive drugs for the remainder of his life. The side effects of the drugs cause him to experience cramps in his hands and legs as well as hand tremors so as to interfere with his ability to perform retinal surgeries.

Sivalingam filed with Unum a claim for disability benefits under Policy No. 317504 (the "Policy"), which had been issued to his employer, OPC.[2] Unum, which acted as the

---

2. Sivalingam claimed that he had become "disabled," which the Policy defines as follows:

> because of injury or sickness: 1. the insured cannot perform each of the material duties of his regular occupation; or 2. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is: a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and b. earning currently at least 20% less per month than his indexed pre-disability earnings due to
>
> (continued...)

administrator and determined eligibility for benefits under the Policy, approved his claim. He began receiving a monthly benefit payment of $22,075.32 on February 11, 1998.

Over ten years later, on May 9, 2008, Unum informed Sivalingam that his benefits were being suspended due to allegedly unreported income he received from his involvement as a member of Main Line Surgery Center, LLC ("MLS"), a company in which he has an ownership interest. Unum also determined that he had been overpaid in the amount of $448,807.93. Sivalingam appealed this decision to Unum's Appeal Unit. He alleges in his complaint that Unum did not review the merits of his appeal on the evidence available at the time. Instead, Unum's Appeal Unit allegedly sent his case back to Unum's Benefits Center to gather further evidence in support of its decision to terminate his benefits and then demanded that Sivalingam withdraw his appeal. On January 9, 2009, Unum informed Sivalingam that it was not only continuing the suspension of benefits but was amending its overpayment assessment to reflect its determination that he had actually been overpaid by $1,430,128.42.

On April 21, 2009, Sivalingam again appealed to the Unum Appeals Unit for review of Unum's decision to suspend benefits. According to his complaint, Sivalingam hired a certified public account, David Glusman ("Glusman") to review Unum's claim file and Sivalingam's personal financial records.

---

2.(...continued)
        that same injury or sickness.

Included in Sivalingam's appeal was a report by Glusman stating that, in his professional opinion, Unum had miscalculated Sivalingam's earnings and the alleged overpayment. Nevertheless, on June 18, 2009, Unum upheld the suspension of benefits and again asserted an overpayment in the amount of $1,430,128.42.

On October 14, 2009, Sivalingam filed the instant action seeking a review of Unum's decision to terminate his benefits and its determination that he had been overpaid. Sivalingam accuses Unum of multiple procedural irregularities during the appeals process, such as deviating both from ERISA guidelines and its own appellate review process, failing to consider certain evidence provided by Sivalingam (such as Glusman's report), and attaching disproportionate weight to evidence supporting termination of benefits.

During a status conference with the court, the parties expressed disagreement regarding the appropriate standard of review in this case and how the standard of review would affect the scope of discovery. Sivalingam has now served Unum with a Notice of Deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure. The Notice includes an expansive list of 22 separate topics for examination regarding Unum's decision to terminate Sivalingam's benefits. Unum responded with the instant Motion to quash and/or for a protective order pursuant to Rules 26[3] and 45[4] of the Federal Rules of Civil Procedure. The Motion

---

3. Rule 26 provides that the court must limit discovery if it
(continued...)

necessarily requires the court to decide two issues: (1) the proper standard of review of Unum's decision to terminate benefits; and (2) the proper scope of discovery under that standard of review.

II.

An entity administering an ERISA plan must "provide a 'full and fair review' of claim denials." <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 113 (1989) (quoting 29 U.S.C. § 1133(2)). A participant or beneficiary who disagrees with an administrator's decision may bring an action in federal court "to recover benefits due to him under the terms of his plan, to

---

3.(...continued)
determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). A party from whom discovery is sought may move for a protective order, which the court may issue, for good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

4. Rule 45 requires the court, upon a timely motion, to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A).

-5-

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

In the seminal case of <u>Firestone Tire and Rubber Company v. Bruch</u>, the United States Supreme Court explained that, in the context of an action under 29 U.S.C. § 1132(a)(1)(B), courts reviewing an administrator's decision to deny benefits are to apply a <u>de novo</u> standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  489 U.S. at 115.  It reasoned that "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers," because "'[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion.'"  <u>Id.</u> at 111 (quoting Restatement (Second) of Trusts § 187 (1959)).

Under this abuse-of-discretion[5] standard of review, an administrator's decision will be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law," and "the court is not free to substitute its

---

5.  Courts sometimes refer to this as an "arbitrary and capricious" standard of review, which is synonymous with "abuse of discretion."  <u>Estate of Schwing v. Lilly Health Plan</u>, 562 F.3d 522, 526 n.2 (3d Cir. 2009); <u>Abnathya v. Hoffmann-La Roche, Inc.</u>, 2 F.3d 40, 45 n.4 (3d Cir. 1993).

own judgment for that of the [administrator] in determining eligibility for plan benefits." Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (internal quotation marks omitted); Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000) (internal quotation marks omitted). A deferential review "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation." Conkright v. Frommert, 130 S. Ct. 1640, 1649 (2010).

As "the proper standard of review of a trustee's decision depends on the language of the instrument creating the trust," we look to the terms of the policy itself to determine whether a plan administrator is granted discretionary authority and thus whether an abuse-of-discretion standard of review applies. Id. at 1646; Luby v. Teamsters Health, Welfare, and Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991). There are no "magic words" that must be used to grant discretion to the plan administrator. McKinnis v. Hartford Life, No. 02-3512, 2009 WL 1444429, at *3 (E.D. Pa. May 22, 2009). If the policy language is ambiguous, we construe it in favor of the insured. Adams v. Life Ins. Co. of N. Am., No. 08-2683, 2009 U.S. Dist. LEXIS 68135, at *14 (E.D. Pa. Aug. 3, 2009).

The Policy here clearly grants discretionary authority to Unum and therefore triggers an abuse-of-discretion standard of review. In a paragraph entitled "Discretionary Authority," the Policy states, "In making any benefits determination under this

policy, the Company [Unum] shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy." This language satisfies the test in <u>Firestone</u> for the grant of discretionary authority to the plan administrator. <u>See</u>, e.g., <u>Nally v. Life Ins. Co. of N. Am.</u>, 299 Fed. App'x 125, 127-28 (3d Cir. 2008);[6] <u>White v. Unumprovident</u>, No. 03-5845, 2005 WL 1683735, at *11 (D.N.J. Jul. 18, 2005).[7] Indeed, it is virtually identical to the language used by the Supreme Court. <u>Firestone</u>, 489 U.S. at 115. The cases cited by Sivalingam in favor of a <u>de novo</u> review are inapposite, as the policy language at issue in those cases was markedly different than that found here.[8]

---

6. The policy in <u>Nally</u> stated that the "Tyco Benefits Review Committee shall have the discretionary authority to determine eligibility for plan benefits and to construe the terms of the plan." <u>Nally</u>, 299 Fed. App'x at 127-28.

7. In <u>White</u>, the parties agreed that discretionary authority was granted to the plan administrator by a policy that read, "[i]n making any benefits determination under this policy, the Company shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of this policy." <u>White</u>, 2005 WL 1683735, at *11.

8. In both cases cited by Sivalingam, the court found the following policy language insufficient to grant discretionary authority to the plan administrator: "Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid. The Insurance Company will require continued proof of the Employee's Disability for benefits to continue." <u>Adams</u>, 2009 U.S. Dist. LEXIS 68135, at *15; <u>Farina v. Temple Univ. Health Sys. Long Term Disability Plan</u>, No. 08-2473, 2009 U.S. Dist. LEXIS 36166, at *27 (E.D. Pa. Apr. 27, 2009).

III.

Having determined that an abuse-of-discretion standard of review applies, we must now determine the proper scope of discovery.

By enacting ERISA, Congress manifested its intent to "provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir. 1990). Consequently, when, as here, a plaintiff alleges that a plan administrator, such as Unum, abused its discretion in deciding to terminate benefits, we generally limit our review to the administrative record, that is, to the "evidence that was before the administrator when [it] made the decision being reviewed." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997); see also Post v. Hartford Ins. Co., 501 F.3d 154, 168 (3d Cir. 2007). This limited review comports with congressional intent by encouraging parties to resolve benefit claims internally and avoid the costs of litigation. See Grossmuller v. Int'l Union, 715 F.2d 853, 857 (3d Cir. 1983). Furthermore, because ERISA claimants are required to exhaust their administrative remedies prior to filing suit, a full and complete administrative record is established and the need for discovery with respect to the merits of an administrator's decision to terminate benefits is eliminated. See Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002); Dandridge v. Raytheon Co., No. 08-4793, 2010 WL 376598, at *3 (D.N.J. Jan. 26, 2010).

In addition to our review of the administrative record, the Supreme Court requires us to consider any conflicts of interest in deciding whether there has been an abuse of discretion. In Firestone, the Court explained that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115 (internal quotation marks omitted). This statement was recently clarified in Metropolitan Life Insurance Company v. Glenn, where the Court held that, while the existence of a conflict of interest, such as where "a plan administrator both evaluates claims for benefits and pays benefits claims," does not change the applicable standard of review, a reviewing judge must "take account of the conflict when determining whether the trustee, substantively or procedurally, has abused [its] discretion." 128 S. Ct. 2343, 2348, 2350 (2008).

The Court in Glenn recognized that "the significance of [a conflict] will depend on the circumstances of the particular case." Id. at 2346. It observed that a conflict would be more significant where an insurance company administrator had "a history of biased claims administration" but would be less significant "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize

inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id. at 2351.

Interpreting Glenn, our Court of Appeals held in Estate of Schwing v. Lilly Health Plan that

> courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion.

562 F.3d 522, 525 (3d Cir. 2009).

Our Court of Appeals has recognized two general categories of conflicts. First, "structural conflicts" relate to financial incentives inherent in a plan's design, such as where the same entity both funds and administers a benefits plan. See Post, 501 F.3d at 162. This is the case here with Unum. Second, "procedural conflicts" pertain to the way in which the administrator arrives at its decision. Id. at 164-65; see also Dandridge, 2010 WL 376598 at *2. Procedural conflicts often take the form of biases, which may be evidenced in a number of ways, such as "self-serving selectivity" in the use and interpretation of expert reports or the administrator's ordering a medical examination despite overwhelming evidence of disability. Post, 501 F.3d at 165.[9]

---

9. Although Post was decided before Glenn, at a time when our Court of Appeals was still applying a sliding-scale standard of
(continued...)

It seems clear from the decisions of the Supreme Court and our Court of Appeals that the plaintiff is not entitled to take discovery on the merits but may do so regarding conflicts of interest. Discovery is the only way the record can be fully developed on the conflicts issue. Otherwise, we would be handicapped in analyzing all the factors we must consider in deciding whether an abuse of discretion has occurred. Indeed, a number of other courts have similarly read Glenn as allowing for some form of limited discovery beyond the administrative record for the purpose of examining alleged conflicts of interest. See, e.g., Denmark v. Liberty Life Assurance Co., 566 F.3d 1, 10 (1st Cir. 2009); Carberry v. Metropolitan Life Ins. Co., No. 09-2512, 2010 WL 1435543, at *2-3 (D. Colo. Apr. 9, 2010); Dandridge, 2010 WL 376598, at *5-6; Stephan v. Thomas Weisel Partners, LLC, No. 08-01935, 2009 WL 2511973, at *9 (N.D. Cal. Aug. 14, 2009) (citing Wilcox v. Wells Fargo & Long Term Disability Plan, 287 Fed. App'x 602, 603-04 (9th Cir. 2008)).

Nevertheless, any such discovery must be circumscribed so as to preserve ERISA's goal of providing an inexpensive and expeditious means of resolving benefit disputes. See Perry, 900 F.2d at 967. The Court in Glenn warned against "adding time and expense to a process that may already be too costly for many of those who seek redress." 128 S. Ct. at 2351. Thus, we must

---

9.(...continued)
review, the discussion of structural and procedural conflicts in Post remains relevant to our post-Glenn abuse-of-discretion analysis.

reconcile, to the extent possible, the tension between allowing discovery, with its attendant costs and delay, and ensuring the efficient and inexpensive resolution of these ERISA disputes.

In his complaint, Sivalingam identifies the structural conflict inherent in Unum's role in both administering and paying benefits from the disability plan. He also asserts that Unum's review was plagued with procedural conflicts, such as irregularities during his first appeal to Unum's Appeal Unit, Unum's disregarding his accounting expert's report, and Unum's selective reliance on only those financial records which supported its decision to terminate benefits. Such accusations, if true, would certainly influence our review of the administrator's decision. Indeed, the Court in Glenn expressed "serious concern[]" regarding accusations that an administrator selectively emphasized evidence in favor of a denial of benefits and deemphasized evidence that suggested a contrary conclusion. Glenn, 128 S. Ct. at 2352.[10]

Based on the allegations in his complaint, we will allow Sivalingam to conduct limited discovery beyond the

---

10. Because Sivalingam raises a number of accusations regarding Unum's allegedly biased claims review, we need not decide whether a plaintiff's bare assertion of a conflict of interest would be sufficient to warrant discovery in an ERISA action such as this one. Compare Pretty v. Prudential Ins. Co. of Am., No. 3:08-cv-60, 2010 WL 814986, at *11 (D. Conn. Mar. 5, 2010); Dandridge, 2010 WL 376598 at *6; Bauer v. Reliance Standard Life Ins. Co., No. 09-cv-0397, 2009 WL 2487407, at *2-3 (E.D. Pa. Aug. 13, 2009); with Johnson v. Conn. Gen. Life Ins. Co., 324 Fed. App'x 459, 466 (6th Cir. 2009); Hughes v. CUNA Mut. Group, 257 F.R.D. 176, 178-79 (S.D. Ind. 2009).

administrative record.  However, as discussed above, such discovery must be limited and may not stray beyond an investigation of Unum's alleged conflicts.

The Notice of Deposition served on Unum by Sivalingam, as noted above, contains an expansive list of 22 topics for examination.  To the extent that Sivalingam seeks to discover information outside the administrative record, some of the topics he has identified exceed the limited scope of discovery allowable.  For example, his request to discover "[d]ocumentation related in any way to Dr. Sivalingam in [d]efendant's possession at the time it denied his claim" goes far beyond the narrow discovery available here.  Similarly, he may not discover the "factors utilized in the determination to deny Dr. Sivalingam's claim for disability benefits," to the extent that he seeks to learn the thought process of the administrator in making its decision.

Some of his requests pertain to conflicts and are properly within the scope of discovery, such as "[s]teps, if any, the [d]efendant has taken to reduce bias and promote accuracy in handling claims and appeals on disability insurance contracts they administer" and "[s]teps, if any, [d]efendant has undertaken to wall off claims administrators from those interested in [d]efendant's finances."  We note that discovery regarding alleged procedural irregularities during Sivalingam's first appeal would also be properly within the scope of discovery here.

At least one topic for examination listed by Sivalingam is impermissible regardless of its purported relation to alleged conflicts. We are fully cognizant of the fact that Unum is both the insurer and the administrator of Sivalingam's benefits, and we will take this conflict into consideration during our abuse-of-discretion review. Consequently, Sivalingam's request to question a 30(b)(6) deponent regarding "[t]he potential conflict of interest created by the fact that [d]efendant is both the insurer and administrator of Dr. Sivalingam's claim" will not be permitted as it would only add needless cost to this action.

We will grant the Motion of Unum to quash and/or for a protective order without prejudice to Sivalingam's serving a more narrowly tailored Notice of Deposition in accordance with this Memorandum.